IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **VALERIE J. HALL,** | * | |
| Plaintiff | * | |
| v. | * | Case No.: RWT 09cv336 |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

This case is about a yellow plastic newspaper band which allegedly caused Plaintiff Valerie J. Hall to trip, fall, and sustain injuries when entering the Branch Avenue Metrorail Station in Prince George's County, Maryland, a station which is maintained by Defendant Washington Metropolitan Area Transit Authority ("WMATA"). For the reasons set forth below, the Court will grant Defendant's Motion for Summary Judgment (Paper No. 14).

## BACKGROUND

On Wednesday, April 23, 2008 at approximately 8:50 a.m., Plaintiff was dropped off at the "kiss and ride" area of the Branch Avenue Metrorail Station in Prince George's County, Maryland. (Compl. ¶ 3; Hall Dep. 8:1-9:2, July 10, 2009.) Plaintiff walked across the bus lane and reached the pylon indicating the name of the station, which is located outside the covered portion of the facility. (Compl. ¶ 3-4; Hall Dep. 16:1-19.) She then felt something "grab her right foot and ankle," causing her to fall face first on the concrete. (Compl. ¶ 4; Hall Dep. 10:10-18.) Plaintiff found a yellow plastic newspaper band wrapped around her shoe. (Compl. ¶ 4; Hall Dep. 11:5-17; *see also* Def.'s Mot. for Summ. J., Ex. A.) She did not see the newspaper

band on the ground before she tripped. (Hall Dep. 12:9-11.) Newspaper vending machines were in close proximity to the area where Plaintiff fell. (Hall Dep. 16:20-17:1; *see also* Pl.'s Opp'n Ex. C.)

Beverly Brown, a WMATA Station Manager, along with another person who identified herself as an off duty metro employee, came to Plaintiff's assistance. (Compl. ¶ 6; Hall Dep. 14:11-15:12; Brown Decl. ¶ 3-4.) Brown removed the newspaper band from Plaintiff's shoe, walked with her to the kiosk, and called for paramedics. (Brown Decl. ¶ 6.) Plaintiff allegedly sustained injuries including (i) contusions to her nose, face, hand, wrist, and knee; (ii) loss of a filling in a tooth and cuts to the mouth; (iii) ongoing pain in her right shoulder and back; and (iv) pain and suffering. (Compl. ¶ 5; *see also* Hall Dep. 18:5-10.)

Brown declared that approximately two months before the incident involving Plaintiff, another woman (named "Barbara") fell at the entrance of the Branch Avenue Metrorail Station when her feet became entangled with a newspaper band. (Brown Decl. ¶ 7.) Brown states that she completed a written WMATA Third Party Liability report immediately after "Barbara" fell and made a "verbal report" to one of her supervisors at WMATA that the refuse left by newspaper vendors and distributors was a safety concern. *Id.* ¶¶ 7-8.

## **PROCEDURAL HISTORY**

On December 3, 2008, Plaintiff, proceeding *pro se*, filed a complaint against Defendant WMATA in the Circuit Court for Prince George's County, Maryland. Defendant then filed a notice of removal in this Court on February 12, 2009.

In her complaint, Plaintiff alleges that Defendant was negligent in failing to "properly inspect and maintain the Branch Avenue Metro Station entrance" and that she sustained injuries as a result of Defendant's failure to remove debris, including the newspaper band, which it knew

or should have known to be present. (Compl. ¶ 12.) Defendant has filed a Motion for Summary Judgment on the grounds that Plaintiff cannot establish a prima facie case of negligence, and specifically, the requisite element of notice. (Paper No. 14.) Plaintiff has filed an opposition thereto (Paper No. 16) and Defendant has filed a reply (Paper No. 17).

## STANDARD OF REVIEW

In evaluating a summary judgment motion, the Court must assess whether there are any issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006); Fed. R. Civ. P. 56. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

In a negligence action, a plaintiff has the burden of proving duty, breach of duty, proximate cause, and damages. *See, e.g.*, *Remsburg v. Montgomery*, 376 Md. 568, 582 (Md. 2003). Under Maryland law, "[t]he liability of owners of real or personal property to an individual injured on their property is dependent on the standard of care owed to the individual and that in turn is contingent upon a determination of the individual's status while on the property . . . ." *Bramble v. Thompson*, 264 Md. 518, 521 (Md. 1972). There are generally four classifications regarding the status of a person entering upon land: invitee, licensee by invitation,

bare licensee, and trespasser.  *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 387-388 (Md. Ct. Spec. App. 1997).

An invitee is a person on the property for a purpose related to the owner's business.  *See Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688 (Md. 1998).  An owner generally owes an invitee a duty to use "reasonable and ordinary care to keep [its] premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [her] own safety, will not discover."  *Bramble*, 264 Md. at 521; *see also Blood v. Hamami P'ship*, 143 Md. App. 375, 384 (Md. Ct. Spec. App. 2002) (explaining that in a slip and fall case, the plaintiff must proffer evidence of a dangerous condition, awareness of the landowner, and failure to exercise ordinary care to cure the defect).

However, common carriers, such as WMATA, owe an elevated duty of care to passengers.  *See Wash. Metro. Area Transit Auth. v. Reading*, 109 Md. App. 89, 100 (Md. Ct. Spec. App. 1996).  Instead of exercising ordinary care, a common carrier "owes its passengers the highest degree of care to provide safe means and methods of transportation for them."  *Todd v. Mass Transit Admin.*, 373 Md. 149, 156 (Md. 2003).  However, a common carrier is not an insurer of the safety of its passengers.  *Mass Transit Admin. v. Miller*, 271 Md. 256, 259 (Md. 1974).  Rather, it "owes its passengers a duty to deliver them to their destination as expeditiously as possible, consistent with safety."  *Id.*  In order to hold a common carrier liable for negligence in circumstances such as those in the instant case, the carrier must have actual or constructive notice of the dangerous condition: "in the case of a foreign substance in the aisle or on the floor of a conveyance the plaintiff must show that the foreign substance was placed there by an employee of the carrier or that the employee knew, or by the exercise of proper care and

diligence should have known of the presence of such foreign substance and failed to remove it."[1] *Carolina Coach Co. v. Bradley*, 17 Md. App. 51, 56-57 (Md. Ct. Spec. App. 1973) (quoting *Lusby v. Baltimore Transit Co.*, 195 Md. 118, 125 (Md. 1950)).

A common carrier's heightened duty begins when a passenger, having paid or with the intent to pay a fare, enters a station, platform, or other premises to wait to board the vehicle. *Leatherwood Motor Coach Tours Corp. v. Nathan*, 84 Md. App. 370, 377 (Md. Ct. Spec. App. 1990). *See also Reading*, 109 Md. App. at 100 (same). However, "it has been held by the overwhelming weight of authority that a carrier owes a duty to all persons coming to its station, through its express or implied invitation, to exercise *ordinary care* to keep the station and the approaches thereto in a reasonably safe condition." *Kaplan v. Baltimore & O. R. Co.*, 207 Md. 56, 59 (Md. 1955) (emphasis added); *see also id.* at 60 (suggesting that before the common carrier relationship begins, a passenger is an invitee).[2]

Assuming, *arguendo*, that the heightened duty of a common carrier applies here,[3] Plaintiff has failed to establish a prima facie case of negligence because she has not demonstrated that an employee of Defendant placed the newspaper band on the ground or that

---

[1] In cases involving only ordinary care, whether there has been sufficient time for a landowner to discover, cure, or clean up a dangerous condition depends on "the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions." *See Deering Woods Condo. Ass'n v. Spoon*, 833 A.2d 17, 24-25 (Md. 2003).

[2] *See also Jackson v. Hines*, 137 Md. 621, 624 (Md. 1921) ("[A] common carrier of passengers, because of the nature and character of its business, must provide such stational facilities and conveniences as are reasonably necessary for the accommodation of its passengers, actual and prospective, and that it owes, to all persons coming to such station through its express or implied invitation, the duty of making and keeping the station, the approaches thereto, and the surroundings thereof where persons lawfully in the station would be likely to go, in a safe condition.").

[3] Defendant argues that the common carrier relationship had not yet commenced because Plaintiff was at or immediately outside the entrance to the Branch Avenue Metrorail Station when she fell. *Cf. Jones v. Wash. Metro. Area Transit Auth.*, 378 F. Supp. 718, 722-24 (E.D. Va. 2005) (citing *Kaplan* for the proposition that a common carrier's highest duty of care does not extend to the condition of station premises and holding that under Virginia law, WMATA owed a duty of ordinary care to plaintiff who, after exiting a WMATA bus, tripped on a sidewalk leading to an escalator to the Pentagon Metrorail Station). The Court need not reach the issue because even under the heightened standard of care, Plaintiff fails to raise a genuine issue of material fact.

Defendant knew or should have known of the dangerous condition but failed to remedy it. *See Carolina Coach Co.*, 17 Md. App. at 56-57.

There is no evidence to suggest that any of Defendant's employees handled the newspaper band. Rather, it appears that third party newspaper vendors and distributors may have improperly discarded the refuse. (*See* Brown Decl. ¶ 7 (discussing WMATA's "Third Party Liability" report); *id.* ¶ 8 (stating that "the refuse left by newspaper vendors and distributors including the plastic bands, was a safety concern"); *see also* Pl.'s Opp'n, Ex. D (asserting that WMATA shall designate the locations of newspaper vendors and machines, enter into newspaper vending contracts, and require indemnity agreements from any liability arising out of the operation of the newspaper vendors).)

Plaintiff instead argues that Defendant was on notice because approximately two months before Plaintiff fell, another woman tripped on a newspaper band at the entrance to the Branch Avenue Metrorail Station and that a WMATA Station Manger made a written and verbal report of the incident. This evidence is insufficient to establish that Defendant was on notice of the hazard.

Plaintiff has not shown, for example, that a significant number of newspaper bands regularly remained on the premises during the two month period after the first incident or that the area was frequented by a large number of people, such that the risk of injury was so high, obvious, and persistent that it required constant vigilance. A pair of similar but isolated incidents occurring approximately two months apart is not a permissible evidentiary basis to reasonably infer that a recurring hazard created by a third party existed for a sufficient period of time to give Defendant an opportunity to respond.

More importantly, Plaintiff fails to establish that the particular newspaper band that entangled her foot was on the ground long enough for Defendant to discover it and remove it. No witness has testified to seeing the band before Plaintiff fell, there is no evidence regarding when the newspaper vendors were at the station (i.e., when the vendors may have improperly discarded the band), and there is no indication that the physical condition of the band itself suggests that it was on the ground for any significant period of time. The band could have been on the ground for five seconds, five minutes, five days, or five weeks. *See, e.g.*, *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 233 (Md. 1965) (affirming summary judgment where a green string bean on which a patron slipped may have fallen a from a grocery cart a few moments before); *Rehn v. Westfield Am.*, 153 Md. App. 586, 598 (Md. Ct. Spec. App. 2003) (affirming summary judgment because a jury would have to speculate as to how long the restaurant knew about the spilled drink and how long it would take to reasonably respond). Accordingly, Plaintiff has set forth no specific facts showing there is a genuine issue for trial regarding whether Defendant was on notice of the hazardous condition and had the opportunity to remove it.

Because there is no legally sufficient evidence that Defendant is guilty of negligence, the Court grants Defendant WMATA's Motion for Summary Judgment (Paper No. 16).


January 7, 2010                                /s/
Date                                Roger W. Titus
                                    United States District Judge